Spencer F. Cargle, Esq.
Cargle & Associates
Attorneys at Law
67 Wall Street, 22nd Floor
New York, NY 10005
Bar No.470448

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

_____**X**

ROBIN D. BRUTON, Individually

                                            Plaintiff,

        -against-

                                                 **Verified Complaint**
                                                **and Jury Demand**
                                                Civil Action,
                                                File Number_____

The Georgetown University,
MedStar Health Inc.
MedStar Georgetown Medical Center, Inc.
The Georgetown University Hospital,
Dr.  Amy Lu, M.D., Dr. Lynt Johnson M.D,
Does JOHN DOE "1" THROUGH JOHN DOE "20" both
inclusive; JOHN DOE "1" through JOHN DOE "20"
regardless of number being each a separate individual
and being fictitious and unknown to the Plaintiff
the persons or parties intended being the physicians,
nurses, technicians, employees, and servants involved
in the treatment of the Plaintiff, as alleged, and unknown
insurance company(s) responsible for insurance coverage
liability for collectively, and or individually each of the
defendants for treatment of patients and the Plaintiff.

                                         Defendants.

_____**X**

ROBIN D. BRUTON, plaintiff (hereinafter "Plaintiff"), complaining of the defendants,

The Georgetown University (hereinafter "Defendant University"), The Georgetown University

Hospital, a/k/a MedStar Georgetown Medical Center, Inc. ( hereinafter Defendant Hospital),

MedStar Health Inc. (hereinafter Defendant Owner), Dr. Amy Lu, M.D. (hereinafter "Defendant

Lu"), Dr. Lynt Johnson, M.D. (hereinafter "Defendant Johnson"), and, Does JOHN DOE "1"

THROUGH JOHN DOE "20" both inclusive; JOHN DOE "1" through JOHN DOE "20"

(hereinafter "Defendant Doctors") regardless of number being each a separate individual and

being fictitious and unknown to the Plaintiff the persons or parties intended being the physicians,

nurses, technicians, employees, and servants involved in the treatment of the Plaintiff, as alleged,

and unknown insurance company(s) responsible for insurance coverage liability for collectively,

and or individually each of the Defendants for treatment of patients and the Plaintiff by her

attorney, Spencer Frederic Cargle, Esq., and Cargle & Associates, respectfully show to this Court

and allege:

## PRELIMINARY STATEMENT

1. This action arises from negligent and carelessly committed medical malpractice

   surgery performed by the Defendant Lu, and Defendant Doctors, under the direct

   supervision of Defendant, Johnson, Defendant Hospital, and Defendant University.

2. The surgery performed on the Plaintiff was the insertion of a catheter into the

   Plaintiff's body to assist with Dialysis of the Plaintiff's kidney.

3. Defendant Lu, Defendant Johnson, and Defendant Doctors negligent and carelessly

   committed medical malpractice surgery that caused the Plaintiff's bowel, or lower

   intestine or upper intestine to be perforated, and thus causing the Plaintiff severe pain

   and suffering.

4. In furtherance of Defendant Lu, Defendant Johnson, and Defendant Doctors negligent

   and carelessly committed medical malpractice surgery, Defendant Lu, Defendant

   Johnson, and Defendant Doctors failed to inform the Plaintiff that her bowel, or lower

   intestine or upper intestine had been perforated.

5. In fact the Plaintiff was informed that the severe pains, vomiting, and loose stools that she experienced were due to her intestines being twisted, which would resolve in time.

6. Upon information and belief this type of surgery is a routine surgery, and considered to be a 45 minute outpatient surgery with very low risk of failure or complications.

## JURISDICTION

7. Plaintiff ROBIN D. BRUTON is a citizen and resident of Maryland, and resides at 2600 Valley Way, Hyattsville, Maryland

8. Defendant Georgetown University was and still is a university for higher education, is a corporation, or partnership or other business entity duly organized and existing pursuant to the laws of the District of Columbia, with its principal place of business located at 37th and O Streets, NW, Washington, DC 20057.

9. Defendant MedStar Health Inc. is a non profit corporation duly organized under the laws of the State of Maryland, with its principal place of business located at 5565 Sterrett Place, Columbia, MD 21044. Defendant MedStar Health Inc. was and still is the owner, and or partner in a partnership that owns Defendant Georgetown University Hospital.

10. Defendant MedStar-Georgetown Medical Center, Inc., is a non profit corporation duly organized under the laws of the District of Columbia, with its principal place of business located at 3800 Reservoir Road, NW Washington, DC 20007. Defendant MedStar-Georgetown Medical Center, Inc. was and still is the owner, and or partner in a partnership that owns Defendant Georgetown University Hospital.

11. Defendant Georgetown University Hospital, a non profit corporation duly organized under the laws of the District of Columbia, with its principal place of business located

at 3800 Reservoir Road, NW Washington, DC 20007. Defendant Georgetown
University Hospital is a subsidiary of Defendant MedStar Health Inc., and or
Defendant MedStar-Georgetown Medical Center, Inc. Defendant Georgetown
University Hospital was and still is a hospital, operating as a hospital.

12. Defendant Dr. Amy Lu, M.D., specializing in renal transplant, at all times hereinafter
mentioned, was and now is a duly licensed and practicing physician, engaged in her
profession in the District of Columbia, with medically practicing privileges given to
her by Defendant Hospital and, with her office located Georgetown University, 3800
Reservoir Road N.W. (4PHC) Washington DC.

13. Defendant Dr. Lynt Johnson, M.D., at all times hereinafter mentioned, was and now is
a duly licensed and practicing physician, engaged in his profession in the District of
Columbia, at all times hereinafter mentioned, was and now is a duly licensed and
practicing physician, engaged in her profession in the District of Columbia, with
medically practicing privileges given to her by Defendant Hospital and, with her office
located Georgetown University, 3800 Reservoir Road N.W. (4PHC) Washington DC.

14. The names and capacities of defendants Does JOHN DOE "1" THROUGH JOHN
DOE "20" both inclusive; JOHN DOE "1" through JOHN DOE "20" are presently
unknown to the plaintiff. Plaintiff is informed and believe that defendants Does JOHN
DOE "1" THROUGH JOHN DOE "20" both inclusive; JOHN DOE "1" through
JOHN DOE "20" regardless of number being each a separate individual and being
fictitious and unknown to the Plaintiff the persons or parties intended being the
physicians, nurses, technicians, employees, and servants involved in the treatment of
the Plaintiff was and now is a duly licensed and practicing physician, engaged in his

profession in the District of Columbia, with physician medical practicing privileges given to him or her by Defendant Hospital and, with his or her office located at Georgetown University, 3800 Reservoir Road N.W. (4PHC) Washington DC.

15. The names and capacities of defendants Does JOHN DOE "1" THROUGH JOHN DOE "20" both inclusive; JOHN DOE "1" through JOHN DOE "20" are presently unknown to the plaintiff. Plaintiff is informed and believe that defendants Does JOHN DOE "1" THROUGH JOHN DOE "20" both inclusive; JOHN DOE "1" through JOHN DOE "20" regardless of number being each a separate individual and being fictitious and unknown to the Plaintiff is unknown insurance company(s) responsible for insurance coverage liability for collectively, and or individually each of the defendants for treatment of patients, with their principal place of business unknown at this time.

16. The Defendant University, Defendant Hospital, Defendant Owner, Defendant Lu, Defendant Johnson, and Defendant Doctors regularly conduct business and legally practiced medicine in the District of Columbia.

17. The matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars.

### STATEMENT OF FACTS

18. Plaintiff was informed by her doctors, Dr. Buari Osman, M.D., Dr. Amy Lu, M.D., Dr. James Roberson M.D., and Dr. Sethi, M.D., that she was a great candidate for peritoneal dialysis (a tube placed in the pelvis so that one can perform dialysis at home), and that she should seriously consider the surgical procedure.

19. Plaintiff had been on hemodialysis for approximately 6 months, which proved to be

hard on her body. She considered the recommendations of her doctors to try another type of dialysis, and weighed some of the side effects (headaches, not being able to remove enough fluid, and exhaustion), and benefits (less taxing on body, greater freedom, self efficacy, less painful) of peritoneal dialysis.

20. Plaintiff decided to have the peritoneal catheter placement procedure.

21. Plaintiff called Defendant Lu to schedule the catheter placement.

22. In August 2004, Plaintiff went to Defendant Hospital for a peritoneal catheter placement surgical procedure.

23. The Plaintiff was informed by Defendant Lu, Defendant Doctors, and nurses employed by Defendant Hospital that the peritoneal catheter placement surgical procedure was a 45 minute, in-out surgical procedure.

24. Upon information and belief, Defendant Lu, Defendant Johnson, and Defendant Doctors performed medical surgery on the Plaintiff for an insertion of peritoneal catheter. A peritoneal catheter was placed into the Plaintiff's body to assist with dialysis of the Plaintiff's kidney.

25. However, during the surgery performed on the Plaintiff for an insertion of peritoneal catheter, Defendant Lu, Defendant Johnson, and Defendant Doctors negligent and carelessly committed medical malpractice surgery by causing the Plaintiff's bowel, or lower intestine or upper intestine to be perforated, and thus causing the Plaintiff severe pain and suffering.

26. After the peritoneal catheter placement surgical procedure, Plaintiff was sent to Defendant Hospital surgical recovery room.

27. While the Plaintiff was in the Defendant Hospital surgical recovery room, she started to experienced severe abdominal pain.

28. After seven hours of severe pain and suffering, the Plaintiff was admitted to Defendant Hospital.

29. The Plaintiff remained in the Defendant Hospital for the following three weeks.

30. During the Plaintiff's three week hospitalization at the Defendant Hospital, she experienced extreme pain and suffering, had difficulty walking, was extremely weak, vomited vile material, received a nasal gastric tube, was not allowed food for (11) eleven days, developed pelvic abscess, received pelvic drainage tube, lost approximately (15) fifteen pounds, and expelled liquid waste.

31. A pelvic drainage tube was inserted into the Plaintiff right buttock to facilitate drainage of her infected pelvis area.

32. During the Plaintiff's three weeks hospitalization at the Defendant Hospital, Defendant Lu and Defendant Doctors continuously informed the Plaintiff that "it appeared that her bowels were twisted around each other and time was what was needed to allow them to untwist."

33. After the peritoneal catheter placement surgical procedure was performed by Defendant Lu, Defendant Johnson, and Defendant Doctors, the Plaintiff continuously suffered from severe pain, depression, and sever mental anguish for the entire three weeks she was admitted and hospitalized at Defendant Hospital.

34. Plaintiff was prescribed and intravenously administered large doses of antibiotics.

35. As a result of the Plaintiff's prolonged three week hospitalization at said Defendant Hospital, and due to Defendant Owner, Defendant University, Defendant Hospital,

Defendant Lu, Defendant Johnson, and Defendant Doctors negligent and carelessly committed medical malpractice surgery Plaintiff suffered sever depression and mental anguish because:

- Plaintiff missed spending time with her daughter, Autumn, who was scheduled to spend her junior year of high school in Zaragoza, Spain;

- Plaintiff was unable to participate in setting up or attending her daughter's sweet-sixteen / bon voyage party that was planned for two weeks before her daughter would leave for Spain;

- Furthermore, plaintiff was also unable to travel with her daughter to New York City, where her daughter boarded the plane that would take her away from the plaintiff for nine (9) months; and

- Moreover, plaintiff was unable to complete her scheduled comprehensive exams, needed to complete her Doctor of Philosophy degree, which delayed completion of her degree by approximately six (6) months.

36. Plaintiff was discharged from Defendant Hospital weighing approximately (110lb) One Hundred Ten pounds, and had to have a pic line inserted into her body in order to have antibiotics administered intravenously.

37. After training with a home healthcare nurse, Plaintiff, with the assistance of her mother, was able to administer the 2 bags of antibiotics that were required daily for the next three weeks.

38. During the Plaintiff's scheduled dialysis day in September, 2004, the Plaintiff was told by the tech, that her graph was not working, and it was clotted.

39. Due to the inability to receive dialysis by way of her graft, the peritoneal dialysis nurse Savetri thought that it was best to give the Plaintiff a little peritoneal dialysis solution through the Plaintiff's peritoneal catheter. Nurse Savetri administered about 400ml of solution, and discovered that it entered well, but the 400ml of solution failed to drain.

40. After 5 minutes, plaintiff had an urgent need use the bathroom, and Plaintiff rushed to the bathroom, and was startled and scared when a large amount of liquid gushed from her rectum.

41. Plaintiff informed the nurse Savetri, who then administered more solution to be certain that it was in fact peritoneal dialysis solution being expelled. Once again, the Plaintiff rushed to the bathroom and expelled the fluid from her rectum.

42. Plaintiff stated "that the nurses whom were assigned to care at Defendant Hospital did same thing and flushed the catheter with a saline solution, but the saline solution would not drain."

43. Thereafter nurse Savetri immediately called Defendant Lu and informed Defendant Lu of what had just occurred to the Plaintiff after nurse Savetri had administered the PD solution to the Plaintiff.

44. Plaintiff spoke to Defendant Lu, and relayed to Defendant Lu her astonishment.

45. Defendant Lu informed the Plaintiff that "for some reason it sounds like your peritoneal catheter is "communicating" with your large bowel."

46. Plaintiff was shocked by Defendant Lu's statement. Plaintiff then asked Defendant Lu "if that meant that there is a hole in my colon?"

47. Defendant Lu said "that it sounded like it, and that she would set up an appointment for the Plaintiff to get a barium enema x-ray of her intestines."

48. Two days later, Defendant Lu called the Plaintiff to inform her that there was a "communication" between the catheter and Plaintiff's bowel, and that plaintiff "would need to have surgery as soon as possible."

49. Defendant Lu set up surgery for the following Monday, and informed the Plaintiff that "not only would she have to get the peritoneal catheter removed, but she would probably have to remove some of plaintiff's large intestine, and try to repair the hole."

50. In addition, Defendant Lu informed the Plaintiff that "she might need a temporary colostomy for about six weeks."

51. Plaintiff was mortified, angry, and confused by Defendant Lu's informed diagnosis and statement.

52. Plaintiff asked Defendant Lu "How did it happen? It was supposed to be a simple, routine, in and out 45-minute procedure. I was supposed to be home before rush hour, and able to use my catheter in two weeks."

53. Defendant Lu replied "she did not know."

54. Plaintiff was leery about going back to Defendant Hospital to let them perform another operation.

55. Plaintiff decided to consult with her other doctors, Dr. Buari Osman, M.D., and Dr James Roberson M.D to get their opinion on the new surgical procedure Defendant Lu had recommended.

56. Plaintiff was under the mental impression that she had no other choice but to let Defendant Lu, Defendant Doctors, and Defendant Hospital correct their negligent and carelessly committed medical malpractice surgery.

57. After the corrective surgery, Plaintiff was admitted and hospitalized in Defendant Hospital for approximately another week to 10 days.

58. After the corrective surgery, Plaintiff was left with a four-inch scar from navel to her pelvis, and a raw two-inch gaping hole to the left of her navel.

59. The raw two-inch gaping hole had to be cleaned with saline, and packed with sterile gauze twice a day until it closed on its own, which took over (3) three weeks.

60. The Plaintiff continues to suffer pain from the area where raw two-inch gaping hole was located.

61. Plaintiff had an appointment with Defendant Lu to have her staples removed approximately (10) ten days after being discharged from Defendant Hospital for the corrective surgery.

62. During the Plaintiff's appointment with Defendant Lu, Plaintiff informed Defendant Lu that she was still suffering from sever pain, abdominal swelling, loose stools, and an urgency to use the bathroom approximately every half hour to 45 minutes.

63. Defendant Lu's indicated she did not know when sever pain, abdominal swelling, loose stools, and an urgency to use the bathroom approximately every half hour to 45 minutes would stop.

64. In fact for the next month, the Plaintiff continued to suffer from sever pain, abdominal swelling, loose stools, and an urgency to use the bathroom approximately every half hour to 45 minutes.

65. On or about November 15, 2004, Plaintiff called Defendant Lu's office to schedule an appointment, because she had not received a call from Defendant Lu regarding a

follow-up appointment to check on the status of the Plaintiff's wound, and her recovery.

66. Plaintiff inquired with the nurse regarding why she had not heard from the Defendant Lu for a follow-up appointment.

67. In furtherance, the Plaintiff asked the nurse "why she had not received a request from Dr. Lu for the barium enema x-ray of her intestines or some other diagnostic tool to check her abdomen."

68. Plaintiff informed the nurse that "she had only gained 3 pounds since she left the Defendant Hospital in September."

69. Plaintiff was given an appointment for the following Monday, but had to reschedule because her only access (graft) for dialysis was clotted.

70. Plaintiff went to Defendant Lu a week later, and a few weeks thereafter so Dr. Lu could lance an abscess that developed approximately 1 inch below her navel.

71. Defendant Lu informed Plaintiff "that one of the self-dissolving stitches had forced its way out". Plaintiff was seen by Defendant Lu a few times in the beginning months of 2005.

72. Furthermore, Plaintiff telephoned Defendant Lu several times about the terrible gastric problems she was experiencing, including severe bloating, pain, loose stools, and inability to eat certain foods.

73. Defendant Lu prescribed Plaintiff medication to help reduce the loose stools, but the medication did not work.

74. Plaintiff asked Defendant Lu "when the problems would cease?" Defendant Lu replied, "I don't know."

75. Plaintiff sought help from Dr. Kenneth Brown, Gastroenterologist, who had the Plaintiff go thru several tests, and then prescribed several medications, that the Plaintiff must take several times a week to help decrease the pain and bloating in her abdomen.

**FOR A FIRST CAUSE OF ACTION IN FAVOR OF THE PLAINTIFF:**

76. That at all times hereinafter mentioned Defendant Owner was and still is a non profit corporation duly organized under the laws of the State of Maryland, with its principal place of business located at 5565 Sterrett Place, Columbia, MD 21044, and Defendant Owner was and still is the owner, and or partner in a partnership that owns Defendant Georgetown University Hospital a/k/a MedStar Georgetown Medical Center, Inc.

77. That at all time hereinafter mentioned, the Defendant University was and still is a corporation, or partnership or other business entity duly organized and existing pursuant to the laws of the District of Columbia.

78. That at all time hereinafter mentioned, the Defendant Hospital was and still is a hospital duly organized, existing, and licensed by the District of Columbia.

79. That at all times hereinafter mentioned, the Defendant University, and Defendant Owner was the owner, operator, and manager of that certain Defendant Hospital designated by it as the Georgetown University Hospital a/k/a MedStar Georgetown Medical Center, Inc. located at 3800 Reservoir Road, NW Washington, DC 20007

80. Upon information and belief, that at all times hereinafter mentioned, in connection with the said operation and maintenance of said Defendant Hospital, the Defendant Owner, and the Defendant University did employ various personnel for the conduct of said hospital for the purpose of rendering care, professional medical care, and

treatment to various persons who had been admitted to said Defendant Hospital suffering from various types of diseases and ailments of injuries.

81. That in connection with the conduct and management and control of said Defendant Hospital, the said Defendant Owner, Defendant University, and Defendant Hospital, employed various other doctors, nurses and personnel for the purpose of rendering and assisting in rendering various forms of medical aid, care and treatment to those admitted to the hospital suffering from various ailments, diseases and injuries.

82. That on or about the 19th day of August, 2004, said Defendant Owner, Defendant University, and Defendant Hospital, had duly in its employ, one Defendant Lu, a licensed physician assigned and attached to said Defendant Hospital, one Defendant Johnson, a licensed physician assigned and attached to said Defendant Hospital, one Defendant Doctors, licensed physician(s) assigned and attached to said Defendant Hospital.

83. That at all times and hereinafter mentioned, Defendant Owner, Defendant University, and Defendant Hospital gave 100% full authorization, granted, and conferred physician practicing privileges to Defendant Lu, Defendant Johnson, and Defendant Doctors, whereas at all times and hereinafter mentioned Defendant Lu, Defendant Johnson, and Defendant Doctors were acting in connection with the discharge and furtherance of their duties for and on behalf of said Defendant University, and Defendant Hospital.

84. Upon information and belief from August 19, 2004 to on or about September 15, 2004, the Plaintiff, was admitted, hospitalized and confined to Defendant Hospital for care and treatment.

85. Upon information and belief, during the aforesaid admission of Plaintiff to Defendant Hospital, Defendant Owner, Defendant University, Defendant Hospital, their agents, servants, and employees, undertook to and did render certain medical care, treatment and diagnosis to the Plaintiff.

86. The aforesaid care, treatment, and diagnosis of the Plaintiff during the aforesaid hospitalization at Defendant Hospital concerned a surgical procedure performed on the Plaintiff to insert a peritoneal catheter into the Plaintiff's body to assist with dialysis of the Plaintiff's kidney.

87. Defendant Lu, Defendant Johnson, and Defendant Doctors negligent and carelessly committed medical malpractice surgery, caused the Plaintiff's bowel, or lower intestine or upper intestine to be perforated, resulting in a huge hole, and thus causing the Plaintiff severe pain and suffering.

88. In furtherance of Defendant Lu, Defendant Johnson, and Defendant Doctors negligent and careless medical malpractice surgery, Defendant Lu, Defendant Johnson, and Defendant Doctors failed to inform the Plaintiff that her bowel, or lower intestine or upper intestine had been perforated, resulting in a huge hole.

89. Instead Defendant Lu, Defendant Johnson, and Defendant Doctors informed the Plaintiff that the extreme discomfort she experienced after the surgery was due to her lower intestine or upper intestine being twisted and they would untwist in time.

90. Upon information and belief this type of surgery is a routine surgery, and considered an in out outpatient surgery with very low risk of failure or complications.

91. Commencing on or about August 19, 2004, during the aforesaid admission of the Plaintiff to Defendant Hospital, the Plaintiff was a patient of the Defendant Hospital,

their agents, servants and/or employees for a surgical procedure performed on the

Plaintiff to insert a peritoneal catheter into the Plaintiff's body to assist with Dialysis

of the Plaintiff's kidney, and she was admitted to Defendant Hospital on or about

August 19, 2004, under the medical diagnosis, care and treatment of the Defendant

University, and Defendant Hospital, their agents, servants and/or employees; and

thereafter the Plaintiff remains under the continuing diagnosis, care and treatment of

the Defendant Owner, Defendant University, Defendant Hospital, Defendant Lu, and

Defendant Doctors their agents, servants and/or employees.

92. As a result of the foregoing, including the medical diagnosis, care and treatment the

Defendant Owner, Defendant University, Defendant Hospital, Defendant Lu,

Defendant Johnson, and Defendant Doctors, their agents, servants and employees,

departed from approved medical and surgical methods in general use and deviated

from standard and accepted medical and surgical practices and procedures in they,

among other things, failed to use ordinary and reasonable medical care, diligence and

skill and failed to possess the requisite degree of learning, knowledge and skill in the

performance of surgically inserting a peritoneal catheter into the Plaintiff's body to

assist with dialysis of the Plaintiff's kidney, and further that the Defendant Owner,

Defendant University, Defendant Hospital, Defendant Lu, Defendant Johnson, and

Defendant Doctors their agents, servants and employees, failed to practice those

procedures generally recognized by persons specializing in surgical procedures to

insert a peritoneal catheter into the Plaintiff's body to assist with dialysis of the

Plaintiff's kidney and preparation for inserting a peritoneal catheter into the Plaintiff's

body to assist with dialysis of the Plaintiff's kidney.

93. That as a result of the aforesaid, Plaintiff was caused to suffer and still suffers severe, disabling, serious permanent personal injuries and upon information and belief, certain internal injuries, complications, and was caused to suffer severe physical pain and mental anguish as a result thereof, and upon information and belief some of these injuries are of a permanent severe and lasting nature.

94. That the said Defendant Owner, Defendant University, Defendant Hospital, Defendant Lu, Defendant Johnson, and Defendant Doctors their agents, servants and employees, at all times hereinafter mentioned, at the time of the admission of said Plaintiff, had in its employ various interns in said Defendant Hospital who were in the general charge of the ward in which the Plaintiff was admitted immediately following her admission into the Defendant Hospital; amongst said interns and under whose care and treatment the Plaintiff came, was Defendant Doctors.

95. That at all times hereinafter mentioned, the said intern(s) was charged with the duty and responsibility to render care, treatment, medication and give and direct various orders to various personnel, including nurses and others in the employ of the Defendant Owner, Defendant University, and Defendant Hospital for the care and treatment of the said Plaintiff who was so admitted.

96. Defendant Owner, Defendant University, and Defendant Hospital, at all times hereinafter mentioned, at the time of the admission of the Plaintiff in the Defendant Hospital on the 19th day of August, 2004 had then in its employ various doctors, Defendant Doctors, nurses and attendants who were charged with the responsibilities to attend to said ward wherein the said Plaintiff was admitted and stationed at and were charged with the responsibility to respond to the various calls of patients therein

and to generally administer care and treatment to and for the various patients under their care, keep and guidance, one of which included the Plaintiff.

97. That at all times hereinafter mentioned, Defendant University, and Defendant Hospital in question had various attendants whose duty, amongst other things, it was to assist the various nurses and/or doctors, the Defendant Doctors, and/or interns or other medical personnel in connection with the attendance of various patients in the aforesaid ward at which the Plaintiff was stationed, including rendering care and treatment to the Plaintiff herein.

98. That the Plaintiff was injured, as aforesaid, by reason of the carelessness and negligence of the Defendant Owner, Defendant University, Defendant Hospital, Defendant Lu, Defendant Johnson, and Defendant Doctors, and their agents, servants and/or employees in failing to perform medical surgery on the Plaintiff for an insertion of peritoneal catheter into the Plaintiff's body  to assist with dialysis of the Plaintiff's kidney in the accepted and proper medical manner to the extent of causing extensive and permanent severe injury as a result thereof; in carelessly and negligently failing and omitting to conduct themselves in the care and treatment of the plaintiff in the usual customary recognized and accepted and standardized manner for those in the position, as hospital and recipient of injured patients, as the Plaintiff was similarly situated; in carelessly and negligently failing and omitting to afford to the Plaintiff the usual accepted standardized, recognized and customary care and diligence and skill in the observation, care and treatment that such case so required; in carelessly and negligently failing and omitting to promulgate and enforce adequate and proper and appropriate Rules and Regulations for the sake of proper care and treatment of patients

in said Defendant Hospital as was Plaintiff at the time in question, in accordance with recognized and customary approved, accepted and standardized methods then in effect in hospitals in the District of Columbia and/or nearby adjacent area; in failing and omitting to institute proper and adequate supervision and attendance over and about the said Plaintiff and in otherwise failing to maintain a norm or reasonable standard of care in connection with the supervision, attendance and care of treatment of the Plaintiff while under its care and control; in so carelessly and negligently failing and omitting to properly treat and care for the injuries so suffered by the Plaintiff in the usual, accepted, standardized, reasonable, customary and recognized manner; in carelessly and negligently failing and omitting to provide the Plaintiff with the requisite care and treatment, medical attention and appropriate supervision which, under the circumstances, was reasonable, recognized, customary and standardized in hospitals in and about the District of Columbia and in and about said adjacent area thereof; in carelessly and negligently failing and omitting to institute and to control due, adequate and proper supervision over and about the aforesaid ward that the said Plaintiff was therein stationed at the time she was admitted to the hospital and thereafter in that it failed to have attendants, nurses and other medical aids and assistants on constant or regular attendance or supervision for the care and treatment of the Plaintiff who, under the circumstances, had been admitted, suffering from external internal injuries, severe pain, admitted internal injuries about various parts of the Plaintiff's body  and in a state of grave emergency and requisite need for diligent, constant care and supervision; in carelessly and negligently failing and omitting to maintain a reasonable standard of care in the maintenance, supervision and care of the

ward in which the Plaintiff was a patient at said Defendant Hospital; in carelessly and negligently failing and omitting to reasonably foresee that the consequences of the method of care and treatment and supervision at the Defendant Hospital by its personnel, under the circumstances already outlined, would likely result in damage or injury to patients or individuals admitted to the Defendant Hospital requiring care and the need of care at said institution, including the Plaintiff herein; in carelessly and negligently failing and omitting to maintain a reasonable standard of care in the maintenance, supervision and care of the ward in which the Plaintiff was a patient, as well as to hire and maintain in the employ of said Defendant University, Defendant Hospital, Defendant Lu, Defendant Johnson**,** and  Defendant Doctors and/or interns, nurses, attendants, medical aid in attendance at said Defendant Hospital having the due responsibility for the care and treatment of the Plaintiff under the circumstances, and otherwise failing and omitting to maintain that degree of care and treatment for sick or injured patients at its institution that a due and prudent hospital institution would have maintained under like circumstances and like condition.

99. Said occurrence was due to the carelessness and negligence of the Defendant Owner, Defendant University, Defendant Hospital, Defendant Lu, Defendant Johnson**,** and Defendant Doctors and/or interns, nurses, attendants, medical aid in attendance their agents, servants and/or employees in failing to insert a peritoneal catheter into the Plaintiff's body to assist with dialysis of the Plaintiff's kidney in the accepted and proper medical manner and all without any fault or lack of care on the part of the plaintiff herein.

100.     By reason of the foregoing, and solely by reason of the carelessness, negligence

and medical malpractice of the Defendant Owner, Defendant University, Defendant

Hospital, Defendant Lu, Defendant Johnson, and Defendant Doctors and/or interns,

nurses, attendants, medical aid in attendance their agents, servants and/or employees

the Plaintiff was caused to suffer and still suffers severe, disabling, and serious internal

injuries, and was caused to suffer severe physical pain and mental anguish as a result

thereof, and upon information and belief some of these injuries are of a permanent and

lasting nature; that Plaintiff was confined to her bed and home as a result thereof, and

was incapacitated from attending to what otherwise would have been her regular

activities; and there was caused to be expended sums of money for medical and

hospital care on her behalf.

101.    Plaintiff still suffers from sever pain, abdominal swelling, loose stools, and

periodic urgency to use the bathroom approximately every half hour to 45 minutes

102.    The amount of damages sought exceeds the jurisdiction of all lower courts which

would otherwise have jurisdiction.

## FOR A SECOND CAUSE OF ACTION IN FAVOR OF THE PLAINTIFF AS TO GEORGETOWN UNIVERSITY, AND GEORGETOWN UNIVERSITY HOSPITAL

103.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

those paragraphs of the complaint marked and designated 1 through 76 inclusive, with

the same force and effect as if hereinafter set forth at length.

104.    Defendant Owner, Defendant University, and Defendant Hospital, prior to the

granting or renewing of privileges or employment of Defendant Lu, Defendant

Johnson, and  Defendant Doctors and/or interns, residents, nurses, attendants, medical

aid in attendance, and others involved in Plaintiff's care, failed to investigate the

qualifications, competence, capacity, abilities and capabilities of said defendants, residents, nurses and other employees, including but not limited to obtaining the following information: patient grievances, negative health care outcomes, incidents injurious to patients, medical malpractice actions commenced against said persons, including the outcome thereof, any history of association, privilege and/or practice at other institutions, any discontinuation of said association, employment, privilege and/or practice at said institution, and any pending professional misconduct proceedings in this State or another State, the substance of the allegations in such proceedings and any additional information concerning such proceedings and the findings of the proceedings; and the Defendant Owner, Defendant University, and Defendant Hospital failed to make sufficient inquiry of the physicians, nurses and/or employees and institutions which should and did have information relevant to the capacity, capability, ability and competence of said persons rendering treatment.

105.    Had the Defendant Owner, Defendant University, and Defendant Hospital made the above stated inquiry or in the alternative had it reviewed and analyzed the information obtained in a proper manner, privileges and/or employment would not have been granted and/or renewed.

106.    By reason of the Defendant Owner, Defendant University, and Defendant Hospital, failure to meet the aforementioned obligation, Plaintiff was treated by physicians, nurses and/or other employees at Defendant Hospital who were lacking the requisite skills, abilities, competence and capacity, as a result of which Plaintiff sustained injuries and complications.

107.    The amount of damages sought exceeds the jurisdiction of all lower courts which

would otherwise have jurisdiction.

WHEREFORE, Plaintiff demands judgment against Defendant Owner, Defendant University, and Defendant Hospital, Defendant Lu, and Defendant Johnson  in such sum as a jury would find fair, adequate and just, and Attorney fees.

Dated:    ) New York, New York
          ) October ____30____, 2006

ATTORNEYS FOR PLAINTIFFS

By: _____
    SPENCER FREDERIC CARGLE, ESQ.
    CARGLE & ASSOCIATES
    67 WALL STREET, 22ND FLOOR
    NEW YORK, NEW YORK 10005
    TELEPHONE: (212) 709-8045
    BAR NO.

STATE OF NEW YORK
COUNTY OF NEW YORK  SS.:

I, ROBIN D. BRUTON, am the Plaintiff in the above entitled action. I have read the foregoing complaint and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
**ROBIN D. BRUTON**

Subscribed and Sworn to before me on 30 day of October, 2006.

_____
NOTARY PUBLIC

SPENCER F. CARGLE
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

Robin D. Bruton
Prince George's County Maryland

The Georgetown University, MedStar Health Inc., MedStar Georgetown Medical Center, Inc., The Georgetown University Hospital, Dr. Amy Lu, M.D., Dr. Lynt Johnson, M.D., Does JOHN DOE "I" THROUGH JOHN DOE "20" both inclusive, JOHN DOE "1" THROUGH JOHN DOE "20" regardless of number being each a separate individual and being fictitious and unknown to the Plaintiff the persons or parties intended being the physicians, nurses, technicians, employees and servants involved in the treatment of the Plaintiff, as alleged, and unknown insurance company(s) responsible for insurance coverage liability for collectively, and individually each of the defendants for treatment of patients and the Plaintiff.

nce George's Cou

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    District of Columbia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Spencer F. Cargle, Esq.
Cargle & Associates
Attorney at Law
67 Wall Street, 22nd Floor
New York, New York 10005

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ● 4 |
| Citizen of Another State | ● 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A–N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ● B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☒ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| O **G. Habeas Corpus/ 2255** | O **H. Employment Discrimination** | O **I. FOIA/PRIVACY ACT** | O **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O **K. Labor/ERISA (non-employment)** | O **L. Other Civil Rights (non-employment)** | O **M. Contract** | O **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   O 2 Removed from State Court   O 3 Remanded from Appellate Court   O 4 Reinstated or Reopened   O 5 Transferred from another district (specify)   O 6 Multi district Litigation   O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. § 1332. Diversity: Medical Malpractice case, Defendants caused sever injuries to Plaintiffs internal organs during a routine surgery.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** _____ Check YES only if demanded in complaint   **JURY DEMAND:** YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE 11/02/06   SIGNATURE OF ATTORNEY OF RECORD _(signature)_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.